IN THE COMMONWEALTH COURT OF PENNSYLVANIA

PSIP JVI Krumsville Road, LLC    :
    :
    v.    :    No. 51 C.D. 2021
    :    Argued: November 15, 2021
Board of Supervisors of    :
Greenwich Township,    :
    Appellant    :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, Judge[1]
    HONORABLE PATRICIA A. McCULLOUGH, Judge[2]
    HONORABLE ELLEN CEISLER, Judge

OPINION
BY JUDGE LEAVITT    FILED: October 26, 2022

    The Board of Supervisors of Greenwich Township (Township Supervisors) appeals an order of the Court of Common Pleas of Berks County (trial court) that granted the land use appeal of PSIP JVI Krumsville Road, LLC (Developer). In doing so, the trial court reversed the Township Supervisors' decision to disapprove Developer's preliminary land development plan for the stated reason that Developer had conveyed land to the Pennsylvania Department of Transportation (PennDOT) for a highway right-of-way without first obtaining Greenwich Township's (Township) subdivision approval. Discerning no error in the trial court's conclusion that a conveyance to a condemnor for a public purpose is exempt from the municipality's subdivision approval and that the Township acted

---

[1]This matter was assigned to the panel before January 3, 2022, when President Judge Emerita Leavitt became a senior judge on the Court.

[2]This case was argued before a panel of the Court that included Judge Crompton. Judge Crompton's service with this Court ended on January 2, 2022, before the Court reached a decision in this matter. Accordingly, Judge McCullough was substituted for Judge Crompton as a panel member in this matter and considered the matter as submitted on the briefs.

in bad faith in its review and processing of Developer's land development plan, we affirm the trial court.

## Background

Developer owns 44.28 acres of land (Property) in the Township's industrial zoning district. The property fronts on Pennsylvania State Route 737, also known as Krumsville Road. In March of 2018, Developer submitted a preliminary land development plan (Plan) to the Township, seeking approval to develop a 495,437-square-foot warehouse distribution facility on the Property.

The Plan's proposed access to State Route 737 requires a highway occupancy permit from PennDOT, which determined that the existing right-of-way for State Route 737 had to be widened.[3] To that end, a strip of Developer's Property, 519 feet in length and between 8 feet and 15.5 feet in width, that fronted State Route 737, had to be conveyed to PennDOT. Another strip of land, 383 feet in length and between 6 feet and 15.5 feet in width, fronting State Route 737 and then owned by Kenneth and Jude Thompson (Thompsons), also had to be conveyed to PennDOT. The Thompsons' land fronting State Route 737 is located just south of the Property. Because the Thompsons were not the applicants for the highway occupancy permit,

---

[3] PennDOT explains that a "right-of-way" is a term used to describe a "'right of passage' over another's land." *See* PENNDOT, *Right-of-Way Frequently Asked Questions*, https://www.dot.state.pa.us/public/districts/district11/internet/row/rowfaq.pdf (last visited October 25, 2022). The right-of-way includes the highway "as well as the shoulder or berm, plus any additional area needed for highway purposes such as drainage, slopes, etc. While the right-of-way is often 33-feet-wide, it may be much wider (120 feet or more in some cases), since it extends beyond the paved road and shoulders." *Id.* "A right-of-way is an easement, which may be created by an express grant." *Bindas v. Department of Transportation*, 260 A.3d 991, 993 n.3 (Pa. Cmwlth. 2021) (citing *Amerikohl Mining Co., Inc. v. Peoples National Gas Co.*, 860 A.2d 547 (Pa. Super. 2004)). In 1979, the General Assembly enacted legislation to authorize PennDOT to acquire land intended for a highway right-of-way in the form of fee simple title; previously, the land acquisition had to be in the form of an easement. *EZY Parks v. Larson*, 454 A.2d 928, 930 (Pa. 1983).

PennDOT directed Developer, first, to acquire the Thompsons' strip of land and, second, to convey the entire strip of land to PennDOT in a single deed.

On April 16, 2018, the Thompsons conveyed to Developer a 0.11-acre strip of land in a special warranty deed reciting that it was for a "Plan of Required Right-of-Way (Fee Simple) . . . ." Reproduced Record at 175a (R.R. __).[4] It further stated that the conveyance was "for the only proper use and behoof of the Grantee, its successors and assigns, forever, *subject as aforesaid*." R.R. 173a (emphasis added). By indenture dated October 15, 2019, Developer conveyed a strip of land, approximately 900 feet in length, to PennDOT "as [a] required right-of-way" for State Route 737. R.R. 188a, 191a. Each deed incorporates an attached "Exhibit A" that depicts the new borders of the right-of-way for State Route 737.

On September 21, 2018, Developer revised its Plan to explain its highway occupancy permit application. On October 12, 2018, the Township engineer wrote to Developer that its acquisition of an interest in the Thompsons' property had been done "without the required subdivision plan submission, review, and approval process." R.R. 39a.

On June 12, 2019, Developer responded, by letter, that subdivision approval was not required because "[t]he area in question" was limited to a highway right-of-way dedication. R.R. 53a. On July 15, 2019, the Township Planning Commission determined, *inter alia*, that an approved subdivision of the Thompsons'

---

[4] The dissent points out that the special warranty deed given by the Thompsons to Developer used the term "fee simple." That deed describes the land as "[b]ounded and described in accordance with a plan made by McMahon Associates, Inc., . . . entitled Plan of Required Right-of-Way (*Fee Simple*) . . . more fully described in the attached Exhibit A." R.R. 172a. The "fee simple" applies only to the "required right-of-way." The special warranty deed conveyed a limited real estate interest to Developer, *i.e.*, the right to convey the land to PennDOT for a highway right-of-way. R.R. 172a.

property was the necessary precondition to a conveyance to Developer, notwithstanding the intended dedication to PennDOT for State Route 737.

In December of 2019, Developer submitted a "Compliance Plan" demonstrating that the expansion of PennDOT's right-of-way did not create dimensional nonconformities with respect to the Thompsons' remaining parcel. The Township engineer agreed, stating that although Developer "did not follow the required subdivision plan procedure/process, it appears the resulting lot in question complies with underlying zoning requirements after the conveyance to PennDOT." R.R. 94a.

On January 20, 2020, the Township Planning Commission met and unanimously voted to recommend that the Township Supervisors deny Developer's Plan application for the sole reason that the conveyance to Developer by the Thompsons had not been preceded by a subdivision filing. The Planning Commission further stated that Developer's "recent conveyance of the subject partial lot to PennDOT does not alleviate the need for Township subdivision approval, and as such, *the original conveyance of the partial lot to [Developer] is still considered an invalid/illegal subdivision which to date has not been corrected*." R.R. 97a (emphasis added).

On April 6, 2020, the Township Supervisors voted unanimously to disapprove the Plan for the stated reason that Developer's acquisition of an interest in the Thompsons' land was done without a subdivision approval under Section 204 of the Township Subdivision and Land Development Ordinance (SALDO).[5]

---

[5]Section 204 of the SALDO defines "Subdivision" as:

> The division or redivision of a lot, tract or parcel of land by any means into two or more lots, tracts, parcels or other divisions of land including changes in existing lot lines for the purpose, whether immediate or future, of lease, partition by the court for distribution to heirs or devisees, transfer of ownership or building or lot

4

Ignoring the Township engineer's acknowledgement that this conveyance fully complied with substantive zoning law, the Township Supervisors held Developer's "process" violation of the SALDO authorized the Plan's disapproval.[6] The Township Supervisors also determined that Developer violated a provision of the SALDO that required driveways to be located solely on the property they serve.

## Trial Court Decision

Developer appealed the Township Supervisors' decision, and the trial court reversed. In doing so, the trial court noted that Developer's acquisition of an interest to the Thompsons' strip of land was limited to the sole purpose of dedicating that interest to the right-of-way for State Route 737. Any acquisition of real property for PennDOT's right-of-way did not require subdivision approval from the Township. Further, Developer's "temporary intermediate ownership" of an interest in the Thompsons' land "had no bearing on the ultimate use of the land which was always intended to be a PennDOT right-of-way." Trial Court PA. R.A.P. 1925(a) Op., 5/3/2021, at 5.

---

development; provided however, that the subdivision by lease of land for agricultural purposes into parcels of more than ten (10) acres, not involving any new street, structure or easement of access or any residential dwelling, shall be exempted. The term subdivision shall refer, as appropriate in these regulations, to the process of subdividing land or to the proposal to be subdivided.

GREENWICH TOWNSHIP SUBDIVISION AND LAND DEVELOPMENT ORDINANCE OF 1996, *as amended* April 2, 2001, and November 7, 2005, §204; R.R. 298a.

[6]Section 301 of the SALDO provides, in pertinent, that:

Hereafter all plans for subdivision or land development within the corporate limits of the Municipality *shall be reviewed* by the Municipality Planning Commission and other Municipal, State, or County officials *as deemed necessary* and shall be approved or disapproved by the Governing Body in accordance with procedures specified in [the SALDO] . . . .

SALDO, §301 (emphasis added); R.R. 300a. This provision required Developer, *inter alia*, to obtain a permit from PennDOT.

The trial court further held that the Township Supervisors acted in bad faith in denying the Plan. The record showed that the Township never advised Developer on how to comply with the SALDO after the Township learned, in 2018, of Developer's acquisition of the so-called "partial lot." R.R. 97a. Finding no substantive defects in the Plan, the Township invoked "self-serving technical violations." Trial Court PA. R.A.P. 1925(a) Op. at 5. Instead of taking steps to enforce the SALDO, the Township denied Developer's application in its entirety. *Id*. In any case, as acknowledged by the Township engineer, Developer's Compliance Plan demonstrated that the Thompsons' parcel fully complied with the "underlying zoning requirements after the conveyance to PennDOT." R.R. 94a.

The Township Supervisors appealed to this Court.

## Appeal

On appeal,[7] the Township Supervisors raise two issues for our consideration. First, they argue that the trial court erred in holding that Developer's Plan fully complied with the substantive provisions in the SALDO. They maintain that Developer's failure to follow the process for subdivision approval constituted a substantive violation of the SALDO. Second, they contend that the trial court erred in holding that they acted in bad faith. Rather, it was Developer that made the knowing decision not to obtain the Township's approval of the subdivision of the Thompsons' property.

---

[7] Where no additional evidence has been taken by the trial court, this Court's scope of review is limited to determining whether the board of supervisors committed an abuse of discretion or an error of law. *In re Richboro CD Partners, L.P.*, 89 A.3d 742, 746 n.1 (Pa. Cmwlth. 2014).

## Analysis

## I.

In their first issue, the Township Supervisors argue that Developer's acquisition of an interest in the Thompsons' land required a prior subdivision approval, and the trial court erred in holding that Developer's Compliance Plan put this issue to rest. Further, Developer's conveyance to PennDOT did not relieve Developer of the need to obtain subdivision approval. The right of PennDOT to "override [] local subdivision regulations" occurs only where PennDOT exercises eminent domain power, which did not occur in the instant matter. Township Supervisors' Brief at 32.

Developer responds that subdivision approval is not required for a conveyance for a public purpose, *i.e.*, the widening of a highway right-of-way. Here, the Thompsons conveyed a real estate interest to Developer for a limited use: its dedication to the State Route 737 right-of-way. Developer further contends that, even assuming that the Thompsons' conveyance of a "partial lot" required subdivision approval, the SALDO violation occurred on the Thompsons' property.[8] Developer disputes the Township's claim that the driveway lies on the Thompsons' property as not supported anywhere in the record. In sum, Developer contends that the Township Supervisors lacked any legal basis for their disapproval of Developer's Plan, as held by the trial court.

A party seeking approval of a land development plan bears the burden of showing its entitlement to approval. *Ball v. Montgomery Township Board of*

---

[8] Section 705.4 of the SALDO authorizes the disapproval of a land development plan for "property *which has been developed or which has resulted from a subdivision of real property in violation of* [*the SALDO*]." SALDO, §705.4; R.R. 377a-78a (emphasis added). Developer's Plan will not improve or develop the Thompsons' property.

*Supervisors*, 598 A.2d 633, 637 (Pa. Cmwlth. 1991). If a plan complies with all objective provisions of the applicable SALDO, as well as other land use regulations, the plan must be approved. *Herr v. Lancaster County Planning Commission*, 625 A.2d 164, 168 (Pa. Cmwlth. 1993). However, a single reason, if legitimate, may support the denial of the plan. *Id.* at 168-69. Here, the Township Supervisors disapproved the Plan for the single reason that the Thompsons' conveyance to Developer of the right to convey land to PennDOT for the right-of-way required a prior subdivision approval.

The trial court held that a conveyance of an interest in land for a public purpose is exempt from land use regulations. In so holding, it relied upon this Court's precedent.

In *Valley Township v. City of Coatesville*, 894 A.2d 885 (Pa. Cmwlth. 2008), the City of Coatesville filed a declaration for the condemnation of property to be used for a municipal golf course. The township filed preliminary objections to the city's exercise of eminent domain on the theory the condemnation violated the Pennsylvania Municipalities Planning Code[9] and the city's SALDO. The city asserted that the Eminent Domain Code[10] did not require it to obtain a subdivision approval. This Court agreed. We held that the Eminent Domain Code governs all condemnations of property for a public purpose, and "nothing in the Eminent Domain Code requires a filing for subdivision approval either before or after a condemnation[.]" *Valley Township*, 894 A.2d at 890. In short, a condemnor does not need a municipality's subdivision approval to effect a condemnation of land for a public purpose.

---

[9]Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§10101-11202.
[10]26 Pa. C.S. §§101-1106.

In *Joseph v. North Whitehall Township Board of Supervisors* (Pa. Cmwlth., No. 1661 C.D. 2009, filed May 21, 2010),[11] a group of objectors appealed the decision of the township supervisors approving the developer's preliminary land development plan. Before this Court, the objectors argued, *inter alia*, that the former landowner's conveyance of a portion of the land to PennDOT for purposes of relocating a public road created several different lots and resulted in an unlawful subdivision of the land. The objectors asserted that the transfer was made by agreement, in lieu of a condemnation proceeding, thereby triggering the need for subdivision approval.

We rejected the objectors' arguments. Relying on *Valley Township*, we held that in the context of a condemnor's acquisition of land for a public purpose, the SALDO did not apply. Accordingly, the parties to the agreement did not need subdivision approval to transfer property for a relocation of a state road. *Joseph*, slip op. at 16. The objectors cited no authority to support their position that a condemnor's exercise of eminent domain to acquire property by agreement, instead of by litigation, had triggered the need for land use approval.

As in *Joseph*, the instant matter concerns the relocation of a state road to make it wider. The deed from the Thompsons to Developer did not convey an unbounded fee simple title to change the boundaries of Developer's parcel. Rather, the deed recited that the 0.11-acre strip of land conveyed is "[b]ounded and described in accordance with a plan made by McMahon Associates, Inc., . . . entitled "Plan of Required Right-of-Way (Fee Simple) . . . more fully described in the attached Exhibit A." R.R. 172a. The deed also stated that the conveyance was "for the only

[11] An unreported decision of this Court, issued after January 15, 2008, may be cited for its persuasive value in accordance with Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code §69.414(a).

proper use and behoof of the *Grantee, its successors and assigns, forever, subject as aforesaid*." R.R. 173a (emphasis added). This created a covenant that the 0.11-acre strip of land be used solely for the dedicated "right-of-way." Further, the covenant "runs with the land," *i.e.*, binding Developer, the "grantee" of the real estate interest, and PennDOT, the "successor." *Logston v. Penndale, Inc.*, 576 A.2d 59, 61 (Pa. Super. 1990) (quoting *Caplan v. City of Pittsburgh*, 100 A.2d 380 (Pa. 1953)) ("Covenants, to run with the land, ordinarily must affect the land and are intended to pass with it, and covenants which are merely personal do not so run."). The deed from Developer to PennDOT recited, likewise, that the real estate transfer was for the "required right-of-way" as shown "on the plot plan attached hereto[.]" R.R. 188a-89a. The attachment to each deed depicts the same new borders of the right-of-way for State Route 737. In short, each deed, from the Thompsons to Developer and from Developer to PennDOT, limited the use of the real estate to that single public purpose.

PennDOT may exercise its eminent domain power by contract in lieu of a formal condemnation proceeding. *Joseph*, slip op. at 16. That is what happened here. The only difference is that in the instant matter, more than one deed was used to effect the "relocation" of State Route 737. R.R. 172a, 188a. Each deed used identical language to describe the boundary of the right-of-way and incorporated the identical exhibits depicting the enlarged right-of-way.

The Township Supervisors have never asserted that the conveyance from Developer to PennDOT required an approved subdivision. The Township has taken that position only with respect to the "partial lot" of the Thompsons' land was dedicated to the right-of-way. R.R. 97a. Logically, if one conveyance required a

10

subdivision filing, then both did. The Township Supervisors have not explained this inconsistency because they cannot.

The Township Supervisors also claim that the Plan's driveway is located on the Thompsons' land. The dissent agrees, stating that "a lengthy driveway that will create an access route" between the proposed commercial warehouse and the State Route 737. *PSIP JVI Krumsville Road, LLC v. Board of Supervisors of Greenwich Township*, __ A.3d __, ___ (Pa. Cmwlth., No. 51 C.D. 2021, filed October 26, 2022) (Ceisler, J., dissenting) slip op. at 6 n.9. However, that lengthy driveway is located entirely on Developer's land, as required by Section 502.14F of the SALDO.[12] The Township treats the Thompsons' strip conveyed to PennDOT for the right-of-way as the "driveway." However, even the Township concedes that the former Thompson land provides "safe driveway *access*." Township Brief at 5-6 (emphasis added). Access to the driveway is *from* the highway; the driveway is distinct from the highway.

Consistent with *Valley Township* and *Joseph*, we hold that neither Developer nor the Thompsons was required to obtain subdivision approval from the Township before, or after, the conveyance to PennDOT for the "required right-of-way." This public purpose rendered the Township's SALDO inapplicable. The trial court did not err.

## II.

In its second issue, the Township Supervisors contend that the trial court erred in holding that the Township acted in bad faith with respect to its

---

[12]Section 502.14.F states that "[a]ll driveways shall be located only on the property for which they serve to provide a means of ingress and egress and shall abut and enter upon a Township road." SALDO, §502.14.F, R.R. 337a.

disapproval of Developer's Plan.[13]  The trial court found that the Township knew in 2018 of the conveyances to PennDOT, but it did not inform Developer how to satisfy the SALDO, assuming that it applied.  The Township Supervisors accepted the Planning Commission's position that Developer's oversight "to date has not been corrected," R.R. 97a, but the Township never communicated to Developer on how such a correction could be effected.  Indeed, the Township conceded that there was no substantive problem with the "subject partial lot" because the remaining Thompson property fully complied with all land use requirements.  On these facts, the trial court found bad faith on the part of the Township.

A municipality has an obligation to process a land development plan in good faith.  If it does not so act, the municipality's disapproval of a development plan will be reversed.  *See Kohr v. Lower Windsor Township Board of Supervisors*, 910 A.2d 152, 156-57 (Pa. Cmwlth. 2006) (affirming trial court's reversal of a municipality's disapproval of a preliminary subdivision plan for municipality's bad faith in, *inter alia*, not providing "specific guidance" to the landowner).  As this Court has explained, when local officials oppose development otherwise sanctioned "by citing trifling, over-technical, or simply reasons unrelated to the law of zoning[,]" they act in bad faith.  *Raum v. Board of Supervisors of Tredyffrin Township*, 370 A.2d 777, 781 (Pa. Cmwlth. 1976).  Decisions on land development plans that are tainted by bad faith will be set aside.

Here, the Thompsons' strip of land measured 6 to 15.5 feet in width by 383 feet in length, and the Property's strip of land measured 8 to 15.5 feet in width and 519 feet in length.  Under the SALDO, a "lot" is defined as "[a] tract or parcel

---

[13] It is necessary to address this issue because the dissent would reject the trial court's holding that the Township lacked authority to regulate the conveyance of land for a public purpose, whether by litigation or by agreement.

of land, regardless of size, intended for transfer of ownership, use, lease, or improvements or for development[.]" SALDO, §204; R.R. 294a. The instant transfer involved a limited real estate interest needed for the relocation of a right-of-way. Section 504 of the SALDO specifies the standards for "lots and parcels" and states, in pertinent part, as follows:

> Section 504 Lots and Parcels
>
> 504.1 General Standards
>
> A. Insofar as is practicable, side lot lines should be at right angles to straight street lines or radial to curved street lines.
>
> B. Where feasible, lot lines should follow municipal boundaries, rather than cross them, in order to avoid jurisdictional problems.
>
> *C. The depth of residential lots shall be not less than one (1) nor more than three (3) times its width.*
>
> *D. Depth and width of parcels[14] intended for non-residential uses shall be adequate for the use proposed and sufficient to provide satisfactory space for on-site parking, loading and unloading, setbacks, landscaping, etc.*
>
> E. If, after subdividing, there exist remnants of land, they shall be either:
>
>> 1. Incorporated into existing or proposed lots, or
>>
>> 2. Legally dedicated to public use, if acceptable to the Municipality.

SALDO, §504; R.R. 338a (emphasis added). The ordinance is silent on "partial lots," and it is silent on the required dimensions of "partial lots" created for the transfer of land for a highway right-of-way.

Neither of the two strips of land could satisfy the requirements for a residential lot. The Thompson depth of 6 to 15.5 feet is less than one times its width

---

[14] The SALDO does not define "parcel"; however, Section 204 of the SALDO provides that "[l]ot shall also mean parcel, plot, site, or any similar term." SALDO, §204; R.R. 294a. Stated otherwise, the terms "lot" and "parcel" are interchangeable.

13

of 383 feet; likewise, the Property depth of 8 to 15.5 feet is less than one times its width of 519 feet. Nor could either strip meet the requirements for a non-residential use, whether commercial or industrial, because the dimensions are not "sufficient to provide satisfactory space for on-site parking, loading and unloading, setbacks, [or] landscaping." SALDO, §504; R.R. 338a. Further, Section 504 contains no standards for a "partial lot" created for dedication to a highway right-of-way. Read literally, or "technically" as the trial court put it, no conveyance of land to PennDOT to widen a state road could ever comply with Section 504 of the SALDO.

Developer had no reason to believe that its acquisition of a "partial lot" for the sole purpose of dedicating it to the State Route 737 right-of-way was subject to Section 504 of the SALDO. Even the Township recognized this problem. In its brief to the trial court, the Township took the position that the subdivision approval process was "in place to ensure that the actions of the developer and the adjoining property owner do not render the remaining parcel non-compliant with the Zoning Ordinance or with the SALDO." Trial Court PA. R.A.P. 1925(a) Op. at 4. Section 504 does not say it applies to "remaining parcels." Nevertheless, the trial court found that the Township received that assurance in the Compliance Plan, which was "largely unnoticed or ignored" by the Township Supervisors. *Id.* By contrast, the Township engineer conceded that the Thompsons' "remaining parcel" was fully compliant with the Township's zoning requirements.

Developer's proposed warehouse generated public opposition. Trial Court PA. R.A.P. 1925(a) Op. at 1. As the trial court explained, even in the face of such opposition, "the Township is obligated to exercise good faith in its review and consideration of land development plans. After a thorough review of the records this Court has determined that obligation has been violated." *Id.* at 5. Specifically,

14

the record is devoid, however, of any reasonable responses or communications from the Township to [Developer] as to what corrections or changes were needed to bring the Plan into compliance regarding the Thompson[s'] [s]trip already conveyed to PennDOT in compliance with PennDOT's requirements. It is this Zugzwang that [Developer] has been placed in by the Township that concerns this Court (Zugzwang is the unenviable position in chess where a player is obliged to move but cannot do so without disadvantage). . . . The Township may not be concerned with fairness to land use applicants despite its obligation to do so, but this Court is.

*Id*. at 5-6. We could not have said it better.

The Plan complied with all the substantive and relevant provisions of the SALDO, which lacks any standards for the creation of a "partial lot" to be dedicated to a highway right-of-way, and the Township has cited no precedent for having applied its SALDO to any other conveyance done to effect a "required right-of-way." This is because such a conveyance has a public purpose and cannot be regulated by the Township. *Valley Township*, 894 A.2d at 885. Even so, Developer filed a Compliance Plan to demonstrate full compliance with the Township's zoning ordinance, as acknowledged by the Township engineer. As the trial court observed, after it learned of the creation of the "Thompson Strip in 2018," the Township took no steps to respond to the purported violation.[15] Trial Court PA. R.A.P. 1925(a) Op.

---

[15] Notably, the Township could have pursued penalties under Section 705.2 of the SALDO for the "process" violation it perceived. Section 705.2 provides that

any person, partnership or corporation who or which has violated any provision of this Ordinance shall, upon being found liable therefor in a civil enforcement proceeding commenced by the Township, pay a judgment of not more than $500.00 plus all court costs. . . . If the violator neither pays nor timely appeals the judgment, the Township may enforce the judgment pursuant to applicable rules of civil procedure. Each day that violation continues shall constitute a separate violation. . . .

15

at 4. Instead, the Township allowed Developer to continue to work on its Plan for the next two years.

The trial court did not err in finding bad faith on the part of the Township. Faced with a final plan that fully complied with every substantive requirement in the SALDO, the Township devised "self-serving technical violations" as the means to reject Developer's Plan. Trial court PA. R.A.P. 1925(a) Op. at 5. This bad faith constituted, in itself, a basis for the trial court to reverse the Township Supervisors' disapproval of Developer's Plan. *See Raum*, 370 A.2d 777, and *Kohr*, 910 A.2d 152.

**Conclusion**

The Thompsons' conveyance of the interest in a strip of their land to Developer was made for the limited, and public, purpose of a dedication to the State Route 737 right-of-way. As such, the conveyance did not require subdivision approval from the Township. The Township Supervisors erred and abused their discretion in denying the Plan. Accordingly, we affirm the trial court's grant of Developer's land use appeal.

_____
MARY HANNAH LEAVITT, President Judge Emerita

Judge Wallace did not participate in the decision in this case.

---

SALDO, §705.2; R.R. 377a. Instead, the Township used the so called "process" violation to disapprove the Plan in its entirety. Trial Court PA. R.A.P. 1925(a) Op. at 5.

16

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

PSIP JVI Krumsville Road, LLC      :
                                       :
           v.                 :         No. 51 C.D. 2021
                                         :
Board of Supervisors of         :
Greenwich Township,          :
              Appellant    :

## O R D E R

AND NOW, this 26th day of October, 2022, the order of the Court of Common Pleas of Berks County, dated October 20, 2020, is AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge Emerita

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

PSIP JVI Krumsville Road, LLC      :

                                  :

           v.                :     No. 51 C.D. 2021

                                  :

Board of Supervisors of           :

Greenwich Township,             :

                Appellant    :     Argued: November 15, 2021

BEFORE:    HONORABLE MARY HANNAH LEAVITT, Judge
                  HONORABLE PATRICIA A. McCULLOUGH, Judge
                  HONORABLE ELLEN CEISLER, Judge

DISSENTING OPINION
BY JUDGE CEISLER                       FILED:  October 26, 2022

I respectfully disagree with the majority's decision to affirm the Court of Common Pleas of Berks County's (Common Pleas) October 20, 2020 order. I do so because I believe the majority has misinterpreted the law and, as a result, has improperly affirmed Common Pleas' reversal of Appellant Board of Supervisors of Greenwich Township's (Board) denial of Appellee PSIP JVI Krumsville Road, LLC's (PSIP) preliminary land development plan.

"Section 508 of the [Pennsylvania Municipalities Planning Code (MPC)][1] provides the procedure whereby the governing body or planning agency of a township shall review and act upon a subdivision and land development application." *Delchester Dev., L.P. v. London Grove Twp. Bd. of Supervisors*, 161 A.3d 1106, 1108 (Pa. Cmwlth. 2017) (citing 53 P.S. § 10508). If the applicant's plan "complies with all of the objective provisions of the applicable subdivision and land development ordinance (SALDO) as well as all other applicable regulations, the plan must be approved by the reviewing body." *Delchester*, 161 A.3d at 1108 (citing *Herr*

---

[1] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101-11202.

*v. Lancaster Cnty. Plan. Comm'n*, 625 A.2d 164, 169 (Pa. Cmwlth. 1993)). Pursuant to Section 508(2) of the MPC, 53 P.S. § 10508(2), when rejecting a subdivision and land development plan, the reviewing body must specify the defect found, describe the requirements that have not been met, and cite to the relevant provisions of the statute or ordinance relied upon as the basis for the denial. *Id.* at 1009 (citing 53 P.S. § 10508(2); *Herr*, 625 A.2d at 169). When the decision "complies with Section 508(2) of the MPC, then rejection of the plan will stand if even one of the reasons for denial is supported by substantial evidence." *Id*. (citing *Herr*, 625 A.2d at 169).

Greenwich Township's SALDO[2] addresses the submission and review procedures for subdivision and land development plans. The procedures are detailed, describing among other things the procedural process for the types of plans (*i.e.*, sketch, preliminary and final), how plans are submitted, who must review the plans, the filing fees involved, the timeline for approval, and the types of plans that are exempt from standard procedures. SALDO §§ 301-313; Reproduced Record (R.R.) at 300a-16a. Similarly, the SALDO provides the requirements for sketch, preliminary, and final plans addressing details such as the total acreage involved, the dimensional scale of the plan, topographical and physical features, soil types and boundaries, and a proposed general street layout. SALDO §§ 401.1-403.3; R.R. at 318a-26a. Finally, the SALDO provides applicants with detailed design standards that include, in relevant part, driveway specifications. SALDO § 502.14; R.R. at 336a-37a.[3]

---

[2] Greenwich Township, Pa., Ordinance No. 1996-1 (1996).

[3] Section 502.14 F. of the SALDO provides, in relevant part, that "[a]ll driveways shall be located only on the property for which they serve to provide a means of ingress and egress and shall abut and enter upon a Township road." SALDO § 502.14 F.; R.R. at 336a-37a.

In this instance, the Board unanimously denied the preliminary land development plan on April 6, 2020, for the following reasons: (1) PSIP's purchase of the 0.11-acre strip of land (Strip) from Kenneth and Jude Thompson (Thompsons) was a subdivision of the Thompsons' property pursuant to Section 204 of the SALDO;[4] (2) PSIP was required to submit a subdivision plan to the Township pursuant to Section 301 of the SALDO;[5] (3) the failure to do so made the conveyance between PSIP and the Thompsons invalid and illegal pursuant to Section 301 of the SALDO; and (4) PSIP violated Section 502.14 F. of the SALDO, requiring driveways to only be on the property for which they serve. R.R. at 98a-101a.

---

[4] Section 204 of the SALDO defines a "subdivision," in relevant part, as:

The division or redivision of a lot, tract or parcel of land by any means into two or more lots, tracts, parcels . . . including changes in existing lot lines for the purpose, whether immediate or future, of . . . transfer of ownership or building or lot development . . . . The term subdivision shall refer, as appropriate in these regulations, to the process of subdividing land or to the proposal to be subdivided.

The term subdivision shall also include any development of a parcel of land including . . . industrial parks . . . which front on existing streets or involves installation of streets and/or alleys, even though the streets and/or alleys might not be dedicated to public use and the parcel might not be divided immediately for the purposes of conveyance, transfer, or sale, or even though the owner does not transfer legal equitable title.

SALDO § 204; R.R. at 298a.

[5] Section 301 of the SALDO provides, in relevant part:

All plans for subdivision or land development within the corporate limits of [the Township] shall be reviewed by the [Planning Commission] and other Municipal, State, or County officials as deemed necessary and shall be approved or disapproved by the [Board] in accordance with the procedures specified in this Ordinance . . . . Any approval not processed as required hereinafter shall be null and void . . . .

SALDO § 301; R.R. at 300a.

Contrary to the majority, I conclude that the Board's determination that the Strip's conveyance constituted a subdivision of land under the SALDO is entitled to deference. *See Tink-Wig Mountain Lake Forest Prop. Owners Ass'n v. Lackawaxen Twp. Zoning Hearing Bd.*, 986 A.2d 935, 941 (Pa. Cmwlth. 2009). This is due to the fact that the Thompsons' property was divided into two lots, which resulted in a change to the existing lot lines, and the Strip was conveyed for purposes of land development. *See* SALDO § 204; R.R. at 298a. Moving on from this initial point, Section 301 of the SALDO required either PSIP or the Thompsons to submit a subdivision plan to the Board for its review and approval. SALDO § 301; R.R. at 300a. The express language of Section 301, in pertinent part, clearly placed PSIP and the Thompsons on notice that any subdivision or land development plan "not processed as required hereafter shall be null and failure to follow this provision will result in the act as being null and void." *Id*. Thus, the Board properly deemed the Thompsons' conveyance of the Strip to PSIP to be null and void. This created a situation where PSIP did not own all of the land where the preliminary land development plan placed the driveway, in violation of Section 502.14 F. of the SALDO, because its putative purchase of the Strip had no legal effect. SALDO § 502.14 F.; R.R. 336a-37a. PSIP's noncompliance with the Township's aforementioned SALDO provisions provides a solid foundation for the Board's denial of the preliminary land development plan.[6] *Delchester*, 161 A.3d at 1108.

---

[6] While the Township did not address the following provisions in its denial letter, I note they also serve as a valid basis for denying the preliminary land development plan. Section 705.1 of the SALDO, provides:

> No person, partnership or corporation shall subdivide any lot, tract, or parcel of land, layout, construct, open or dedicate any street, sanitary sewer, storm sewer or water main or other improvements for public use, travel or for the common use of occupants for buildings abutting thereon, sell, lease, transfer or agree or enter into an agreement to sell any land in a subdivision or erect any building in a subdivision

Given this, I would hold that the Board did not improperly deny the preliminary land development plan and that Common Pleas' reversal of the Board was done in error.

Furthermore, I disagree with the majority's contention that, per our Court's extant case law, there was no need to secure the Board's approval of the Thompson property's subdivision in order for PSIP to legally transfer the Strip and other land to the Pennsylvania Department of Transportation (Department). It is important to

---

> until (a) a Record Plan of such subdivision shall have been approved and properly records, (b) improvements have been either constructed or guaranteed and (c) all of the provisions of this Ordinance have been complied with.

SALDO § 705.1. Section 705.3 of the SALDO also provides:

> In addition to other remedies, the Township may institute and maintain appropriate actions by law or in equity to restrain, correct or abate violations, to prevent unlawful construction, to recover damages, to prevent illegal occupancy of a building, structure or premises and to set aside and invalidate any unlawful conveyances of land. The description by metes and bounds in the instrument of transfer or other documents used in the process of selling or transferring shall not exempt the seller or transferor from such penalties or from the remedies provided herein.

SALDO § 705.3. Finally, Section 705.4 of the SALDO provides, in relevant part:

> The Township may refuse to issue any permit or grant any approval necessary to further improve or develop any real property which has been developed or which has resulted from a subdivision of real property in violation of this Ordinance. Such refusal shall apply to any of the following applicants:
> A. The owner of record at the time of such violation.
> . . . .
> C. The current owner of record who acquired the property subsequent to the time of violation without regard as to whether such current owner had actual or constructive knowledge of the violations.
> . . . .
> As an additional condition for issuance of a permit or the granting of approval to any such owner, current owner, . . . for the development of any such real property, the Township may require compliance with the conditions that would have been applicable to the property at the time the applicant acquired an interest in such real property.

SALDO § 705.4 A., C.

remember that there were multiple conveyances involved that led to the Department's receipt of this land. The first conveyance was between the Thompsons and PSIP, through which the Thompsons' property was subdivided to create the Strip. The second conveyance was between PSIP and the Department, which transferred the Strip (along with some of the Developer's land) to the Department for the right-of-way. Given this, the second conveyance is irrelevant to the Board's rationale for denying the preliminary land development plan. The Board was concerned with the first conveyance where the Thompsons' property was subdivided, not PSIP's subsequent conveyance of the Strip and other land to the Department as part of the highway occupancy permit approval process. Thus, this Court's decisions in *Valley Township v. City of Coatesville*, 894 A.2d 885 (Pa. Cmwlth. 2006), and *Joseph v. North Whitehall Township Board of Supervisors* (Pa. Cmwlth., No. 1661 C.D. 2009, filed May 21, 2010),[7] are inapposite, as neither one concerns the conveyance of property between two non-governmental entities. Simply stated, the second conveyance does not immunize the illegality of the first transaction, nor do *Joseph* or *Valley Township* stand for that proposition that the majority contends they do, *i.e.*, that subdivision approval was unnecessary in this instance because the Strip was eventually transferred to the Department.

I also take issue with Common Pleas' determination that the Township exhibited bad faith during its consideration of PSIP's preliminary land development plan. A municipality has a duty to review a land development plan in good faith, which it violates if it does not raise any objections thereto in a timely manner and refuses to consider any proposed curative modifications; this is especially true

---

[7] Per Section 414(a) of this Court's internal operating procedures, 210 Pa. Code § 69.414(a), "an unreported panel decision of this Court issued after January 15, 2008," may be cited for its persuasive value.

EC - 6

"where the defects in the plan [are] merely technical and [do] not involve a failure to comply with ordinances." *Kassouf v. Twp. of Scott*, 883 A.2d 463, 475 (Pa. 2005) (citing *Raum v. Bd. of Supervisors of Tredyffrin Twp.*, 370 A.2d 777, 798 (Pa. 1977)). However, a municipality does not violate this duty if, prior to declining to approve a land development plan, it "afford[s] the developer a reasonable opportunity to address the defects in [the] plan." *Id.* (citing *Herr*, 625 A.2d at 171). As the Supreme Court has recognized, "reciprocal actions taken in good faith are required of the parties" throughout the land development process, but this requirement in no way "eliminate[s] the inherent discretionary powers of a municipality." *Id.* at 476.

In this instance, PSIP was provided with multiple opportunities to cure what the Board considered a significant defect—*i.e.*, not submitting a subdivision plan when the Thompson property was subdivided and the Strip was conveyed to PSIP. The Township alerted PSIP about this issue multiple times, but PSIP chose to ignore the Township's concern and instead elected to submit a "Compliance Plan" at the eleventh hour that did not follow the Township's SALDO requirements. Given this, I would conclude that the Township acted in good faith in this case, as well as that Common Pleas improperly concluded otherwise.[8]

Accordingly, I dissent.

_____
ELLEN CEISLER, Judge

---

[8] Nor would I conclude, as Common Pleas did, that the Township created a Zugzwang (*i.e.*, a chess move which disadvantages a player either way) for PSIP. *See* Common Pleas Op. at 37. Rather, PSIP had a proper move at its disposal, in that it could have simply submitted a compliant subdivision plan during the review and approval process for the preliminary land development plan. Bluntly speaking, PSIP's perceived disadvantage was, in actuality, a self-inflicted result of its decision to ignore the rules of the game, and its position that the Township acted in bad faith is akin to it flipping over the chessboard after losing a handful of pawns.